IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
2:16-CV-4-FL

| | |
|---|---|
| SHERRI RAMOS BRANDT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Sherri Ramos Brandt ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. D.E. 24, 26. Both filed memoranda in support of their respective motions. D.E. 25, 27. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Text Ord. dated 9 Sept. 2016. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

## BACKGROUND

### I. CASE HISTORY

Plaintiff filed an application for DIB on 15 March 2012, alleging a disability onset date of 1 October 2007. Transcript of Proceedings ("Tr.") 32. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 32. On 8 April 2014, a video hearing was held before an administrative law judge ("ALJ"), at which plaintiff (appearing

with counsel), plaintiff's mother, and a vocational expert testified. Tr. 54-80. The ALJ issued a decision denying plaintiff's claim on 13 May 2014. Tr. 32-41. Plaintiff requested review by the Appeals Council. *See, e.g.*, Tr. 5-21. On 4 December 2015, the Appeals Council denied the request for review. Tr. 1-4. At that time, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 3 February 2016, pursuant to 42 U.S.C. § 405(g). *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5).

## II.  STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," the temporal criterion being known as the duration requirement. 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (defining duration requirement); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

2

To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[1] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[2]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[3] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

---

[1] *See also* 20 C.F.R. § 404.1545(a)(1).

[2] *See also* 20 C.F.R. § 404.1545(a)(2).

[3] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(2); 404.929.

## III. ALJ'S FINDINGS

Plaintiff was 38 years old on the alleged onset date of disability, 1 October 2007; 43 on the date last insured, 31 December 2012; and 44 years old on the date of the hearing, 8 April 2014. *See, e.g.*, Tr. 58 (plaintiff's testimony as to her date of birth). Plaintiff testified that she completed the twelfth grade. Tr. 58. The ALJ found that she had past work as a receptionist, waitress, and veterinarian technician. Tr. 40 ¶ 6.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4) for the period through plaintiff's date last insured, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. Tr. 34 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: degenerative disc disease and fibromyalgia. Tr. 34 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 36 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform the full range of medium work, as defined in 20 C.F.R. § 404.1567(c).[4] Tr. 37 ¶ 5. The ALJ found at step four that plaintiff had the ability to perform her past work as a receptionist, waitress, and veterinarian technician as generally performed. Tr. 40-41 ¶ 6. The ALJ accordingly concluded that plaintiff was not disabled from 1 October 2007, the alleged disability onset date, through 31 December 2012, the date last insured. Tr. 41 ¶ 7.

---

[4] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "M-Medium Work," 1991 WL 688702. "Medium work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

# STANDARD OF REVIEW

Under 42 U.S.C. §405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.* at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible

without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and that the court should find her disabled as a matter of law on the grounds that the ALJ erred in her (1) severity determination at step two; (2) assessment of the medical opinions of a treating physician of plaintiff's, Theodore W. Nicholas, M.D.; (3) assessment of plaintiff's credibility; and (4) RFC determination, including the implicit determination that plaintiff could work on a regular and continuing basis. Because the court finds that the ALJ's assessment of Dr. Nicholas's opinions and plaintiff's credibility are dispositive of this appeal, it reaches only those contentions on the merits.

## ALJ'S ASSESSMENT OF DR. NICHOLAS'S OPINIONS

### I. APPLICABLE LEGAL PRINCIPLES

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* § 404.1527(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(c)(2); *Ashmore v. Colvin,* No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. § 404.1527(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted,* 2015 WL 1810173, at *1 (21 Apr. 2015);

*Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than the opinions of a nonexamining source. *See* 20 C.F.R. § 404.1527(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See, e.g.*, Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *3 (2 July 1996).

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

## II. ANALYSIS

Dr. Nicholas is a board-certified specialist in the field of physical medicine and rehabilitation, also known as physiatry, and is a fellow of the American Academy of Physical Medicine and Rehabilitation ("AAPMR"). *See, e.g.*, Tr. 383 (copy of Dr. Nicholas's letterhead listing his foregoing credentials). Dr. Nicholas treated plaintiff from 1 June 2009 to 31 January 2014, over which period he had 17 office visits with her. *See* Tr. 370-83; 451-52; 560-65; 573-74. On 22 September 2012, over three years after Dr. Nicholas's treatment of plaintiff began and

several days before his thirteenth office visit with plaintiff, Dr. Nicholas issued a medical source statement (Tr. 462-69).

Among the opinions expressed by Dr. Nicholas in his medical source statement were, as described by the ALJ, that "the claimant had pain that would frequently interfere with attention and concentration, and had marked limitation in dealing with work stress (Exhibit 11F)." Tr. 35 ¶ 3 (referencing Tr. 463 ¶¶ 8, 9). At step two of the sequential analysis, the ALJ discounted these opinions, giving three reasons:

> [T]he undersigned affords little weight to Dr. Nicholas' opinion. [1] Dr. Nicholas is a pain management specialist and not a physician specialized in mental health; thus, Dr. Nicholas is not qualified to make an informed opinion regarding the effect of the claimant's pain on her mental functioning. [2] Further, the evidence fails to establish the claimant has sought or received ongoing psychotherapy or psychotropic medication therapy for treatment of anxiety, which suggests that the claimant's anxiety is not as severe or disabling as alleged. [3] It appears that the claimant has been able to function without benefit of psychotherapy (Exhibits 2F, 4F, 5F, 9F, and 10F).

Tr. 35 ¶ 3.

Plaintiff argues that the ALJ erred in discounting Dr. Nicholas's opinions as he did. The court agrees. The reasons stated by the ALJ for giving the opinions little weight are deficient.

As to the first reason, while it is true that, as indicated, Dr. Nicholas is a pain management specialist and not a psychologist or psychiatrist, it appears unfounded that he is "not qualified to make an informed opinion regarding the effect of the claimant's pain on her mental functioning." Tr. 35 ¶ 3. The AAPMR describes the field of physiatry as follows:

> Physical medicine and rehabilitation (PM&R), also known as physiatry or rehabilitation medicine, aims to enhance and restore functional ability and quality of life to those with physical impairments or disabilities affecting the brain, spinal cord, nerves, bones, joints, ligaments, muscles, and tendons. . . . Unlike other medical specialties that focus on a medical "cure," the goals of the physiatrist are to maximize patients' independence in activities of daily living and improve quality of life.

> Physiatrists are experts in designing comprehensive, patient-centered treatment plans, and are integral members of the care team. They utilize cutting-edge as well as time-tested treatments to maximize function and quality of life for their patients, who can range in age from infants to octogenarians.

AAPMR, About Physical Medicine & Rehabilitation/What is Physical Medicine and Rehabilitation?, http://www.aapmr.org/about-physiatry/conditions-treatments (last visited 19 Jan. 2017).

The AAPMR further instructs:

> PM&R physicians (or physiatrists) evaluate and treat patients with short- or long-term physical *and/or cognitive impairments and disabilities* that result from musculoskeletal conditions (neck or back pain, or sports or work injuries), neurological conditions (stroke, brain injury or spinal cord injury) or [other] medical . . . conditions. Their goal is to decrease pain and enhance performance without surgery.

*Id.*, Conditions and Treatments (emphasis added). It thus appears very much in the domain of a physiatrist such as Dr. Nicholas, particularly given his board certification in the field and status as a fellow of the AAMP, "to make an informed opinion regarding the effect of the claimant's pain on her mental functioning." Tr. 35 ¶ 3.

As to the second reason given by the ALJ, substantial evidence clearly supports the ALJ's finding that plaintiff has not sought or received ongoing psychotherapy. But the further finding that plaintiff has not "sought or received ongoing . . . psychotropic medication therapy for treatment of anxiety" appears completely baseless. Tr. 35 ¶ 3. The ALJ herself acknowledges in her decision that Dr. Nicholas treated plaintiff for her anxiety and depression with regular medication:

> Regarding the claimant's anxiety, records from Theodore W. Nicholas reflect a diagnosis of anxiety and depression treated with anti-anxiety medications. Notably, a review of Dr. Nicholas' records shows the claimant's low dosage of 2mg of Xanax per day remained unchanged throughout the entire period of treatment.

10

Tr. 35 ¶ 3. The records of Dr. Nicholas confirm that at every visit he prescribed Xanax for plaintiff. Tr. 385, 382, 381, 380, 379, 378, 377, 376, 375, 373, 371, 452, 565, 574, 573, 562, 560 (cited in chronological order). A psychotropic medication is one that "affect[s] mental function, behavior, and experience," and Xanax is a psychotropic medication. Pamela L Lindsey, DNSc, RN, *Psychotropic Medication Use among Older Adults: What All Nurses Need to Know*, Adverse Effects of Psychotropic Medications in Older Adults & Anxiolytic/Hypnotic Medications, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3128509/ (last visited 19 Jan. 2017) (identifying Xanax as a psychotropic medication); *see also, e.g., Stedman's Medical Dictionary*, psychotropic drug, entry no. 267300 (defining psychotropic drug as "any drug that affects the mind").

The third reason provided by the ALJ for giving little weight to Dr. Nicholas's opinions on attention and concentration, and work stress is, as noted, that she "has been able to function without benefit of psychotherapy." Tr. 35 ¶ 3. The deficiency with this finding is that it does not specify the level of functioning. While the finding is arguably supported by substantial evidence, without any specification as to the level of functioning, it gives scant support to the attribution of little weight to Dr. Nicholas's opinions.

Another portion of the ALJ's discussion of opinion evidence appears as the last paragraph of her analysis of plaintiff's RFC. She states:

> Further, a physician's opinion may be rejected if it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings, or if it is not accompanied by objective medical evidence (*Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); and *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)). Here, the undersigned has considered and assigned little weight to the opinion of Dr. Nicholas, as it is internally inconsistent with his overall opinion (Exhibit 11F).

Tr. 40 ¶ 5. These findings are, again, fraught with ambiguity.

Although the initial finding (that is, the first sentence) is an accurate statement of the law, it is unclear whether the ALJ intends that it apply to Dr. Nicholas's opinions and, if so, which ones. There is no specification as to whose and which opinions it applies. Moreover, this finding comes immediately after a paragraph discussing the opinions of other sources. The nearest prior discussion of Dr. Nicholas's opinions appears a page and a half earlier. *See* Tr. 38-39 ¶ 5. While the second finding by the ALJ (comprising the second sentence) does mention Dr. Nicholas's opinions, it raises a separate issue regarding them, namely, their internal inconsistency. The Commissioner argues that the initial finding does apply to Dr. Nicholas's opinions generally, but she cites no basis for that position. Ultimately, the court is left to speculate as to whether the ALJ discounted any of Dr. Nicholas's opinions on the basis of lack of support pursuant to the initial finding and, if so, which ones.

The second finding—that the ALJ "assigned little weight to the opinion of Dr. Nicholas, as it is internally inconsistent with his overall opinion"—is unintelligible. Tr. 40 ¶ 5. The opinion to which she is giving little weight is not identified, nor is the purportedly conflicting "overall opinion." The opinions to which the ALJ is referring are not otherwise apparent.

The ALJ had made a prior finding on inconsistency in Dr. Nicholas's opinions, but it does not clarify the second finding. The prior finding reads:

> Functionally, in September 2012, Dr. Nicholas opined that the claimant would be unable to perform a full range of work activity at even a sedentary level of exertion due to inability to sit for more than four hours and stand and walk for more than two hours, and the need to rest for four hours, during an eight-hour workday. The undersigned affords little weight to Dr. Nicholas' opinion as it is internally conflicting. Dr. Nicholas' opinion that the claimant requires four hours of rest during an eight-hour workday contradicts his opinion that a morning break, lunch break, and afternoon break scheduled a[t] two-hour intervals would be sufficient rest during an eight-hour workday (Exhibit 11F).

Tr. 38-39 ¶ 5.

The second finding does not appear simply to reiterate this prior finding. In the prior finding, Dr. Nicholas's "overall opinion" would seem to be the opinion that plaintiff cannot do even sedentary work. It was this opinion to which the ALJ was giving little weight. In contrast, in the second finding, the ALJ was assigning little weight to some other opinion with which the "overall opinion" conflicted. It seems implausible that this other, conflicting opinion is that regular breaks—one in the morning, one at lunch, and one in the afternoon—would be sufficient for plaintiff since the ALJ found plaintiff able to work. The court is, again, left to speculate as to what the ALJ meant.

The failure by the ALJ to adequately explain her assessment of Dr. Nicholas's opinions itself constitutes legal error, and the error is not harmless. *See, e.g., Garner v. Astrue*, 436 Fed. Appx. 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at *4 & n. 7, 7 (M.D.N.C. 14 Aug. 2013). A proper assessment of Dr. Nicholas's opinions could have led to a different outcome in various aspects of the ALJ's analysis, including her assessment of plaintiff's credibility, her determination of plaintiff's RFC, and, conceivably, her ultimate decision on disability. A central reason, of course, is the potentially substantial weight properly due the opinions of Dr. Nicholas as a treating physician of plaintiff's, especially in light of the extended relationship he had with her. *See, e.g., Boyd v. Colvin*, No. 9:13-CV-03189-DCN, 2015 WL 875422, at *3 (D.S.C. 2 Mar. 2015) (remanding case and noting that "because of the importance of treating physicians' opinions and the unequivocal law stating that the ALJ must weigh such opinions and provide good reasons for the weight given, the court is extremely hesitant to accept what is, at most, an implicit rejection of [the treating physician's] opinion"); *Mason v. Colvin*, No. 4:13-CV-93-D, 2014 WL 4162788, at *8 (E.D.N.C. 29 July 2014) ("[T]he court cannot overlook the 'importance

of analyzing a treating physician's opinion.'" (quoting Ord. (DE–31), *Moreno v. Colvin*, No. 4:12–CV–143–D (6 Sept. 2013)), *rep. & recomm. adopted*, 2014 WL 4162818 (20 Aug. 2014). Remand of this case is therefore required.

The deficiencies by the ALJ in her assessment of Dr. Nicholas's opinions are also properly seen as frustrating meaningful review of the ALJ's decision by the court. Specifically, by virtue of these deficiencies, the ALJ failed to build "'an accurate and logical bridge from the evidence to [the] conclusion[s]'" she reached regarding Dr. Nicholas's opinions, as required. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). This failing provides an independent basis for remand.

## ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY

### I. APPLICABLE LEGAL PRINCIPLES

The ALJ's assessment involves a two-step process. First, the ALJ must determine whether the claimant's medically documented impairments could cause the claimant's alleged symptoms. *Craig*, 76 F.3d at 594-95. Next, the ALJ must evaluate the claimant's statements concerning those symptoms. *Id.* at 595. The ALJ's "'decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996))[5]; *see also* 20 C.F.R. § 404.1529 (setting out factors in evaluation of a claimant's pain and other symptoms).

It is true, of course, that "[a] party seeking benefits need not provide objective medical evidence to corroborate his allegations of pain." *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3727317, at *2 (E.D.N.C. 28 Aug. 2012). "However, an ALJ may discredit a party's allegations

---

[5] Although Soc. Sec. Ruling 96-7p was rescinded by Soc. Sec. Ruling 16-3p, 2016 WL 1119029 (issued 16 Mar. 2016; effective 28 Mar. 2016 pursuant to 81 Fed. Reg. 15776 (24 Mar. 2016)), it postdates the ALJ's decision in this case.

of pain to the extent the allegations are inconsistent with (1) objective medical evidence of the underlying impairment or (2) the pain reasonably expected to be caused by the underlying impairment." *Id.* (citing *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006)); *Craig*, 76 F.3d at 595. In other words, an ALJ is not "obligated to accept the claimant's statements at face value; rather, the ALJ 'must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.'" *Hyatt v. Colvin*, No. 7:14-CV-8-D, 2015 WL 789304, at *11 (E.D.N.C. 24 Feb. 2015) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2). Specifically, the Regulations require the ALJ to consider "all of the available evidence," which includes a claimant's history; the signs and laboratory findings (*i.e.*, objective medical evidence); statements about the effect of symptoms from the claimant, treating or nontreating sources, and other persons; and medical opinion evidence. 20 C.F.R. § 404.1529(c)(2).

## II. ANALYSIS

Plaintiff alleges, of course, that her impairments are disabling. In assessing her allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 40 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible. Tr. 40 ¶ 5. She stated:

> [T]he claimant's contentions regarding physical limitations and functional capability are inconsistent with a reasonable reading of her medical history. *Her assertions regarding her limited activities, severity of impairments, intensity, persistence and limiting effects of symptoms, and inability to work are not accepted as credible to the extent they are inconsistent with the above residual functional capacity assessment.* The medical evidence findings are not indicative of a debilitating condition that would prevent the performance of work activity described in the residual functional capacity set forth above.

Tr. 40 ¶ 5 (emphasis added).

Plaintiff contends that the ALJ erred in finding her less than fully credible. The court agrees.

One deficiency evident on the face of the ALJ's credibility determination is that it is based to a substantial degree on the RFC that the ALJ had determined her to have. The Fourth Circuit in *Mascio* condemned such backwards reasoning. There, the ALJ based his determination on the claimant's credibility on the RFC that the ALJ had determined the claimant to have, stating "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Mascio*, 780 F.3d at 639. In rejecting the ALJ's reasoning, the Fourth Circuit explained, "We agree with the Seventh Circuit that this boilerplate 'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Id.* (internal quotation marks omitted) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)).[6]

As *Mascio* points out, an ALJ's improper reliance on his RFC determination in making the credibility determination is harmless if the ALJ otherwise properly analyzes the claimant's credibility. *Id.* The ALJ here cites plaintiff's medical history as another basis for her credibility determination. As discussed, however, the ALJ's evaluation of plaintiff's medical history is deficient, in part, because of her deficient assessment of Dr. Nicholas's opinions. There are additional deficiencies.

Specifically, the ALJ found as follows:

While the claimant sought emergency room treatment for pain in January 2013, a review of the evidence fails to establish the claimant required frequent and repeated emergency room visits, hospitalizations, or surgical interventions for any

---

[6] While the ALJ issued her decision, on 13 May 2014, prior to issuance of the Fourth Circuit's decision in *Mascio*, on 18 March 2015, the Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner after issuance of the *Mascio* decision, on 4 December 2015.

of her impairments, especially since the alleged onset date. While lumbar fusion was recommended in July 2008, the evidence fails to establish the claimant has received surgical intervention (Exhibit 14F, pp. 4 and 21). In fact, since the alleged onset date, treatment has been primarily conservative and minimally invasive in nature *consisting of only intermittent medicinal therapy with no physician rendering an opinion that the claimant is disabled or corroborating her allegations of total incapacitation.*

Tr. 39 ¶ 5 (emphasis added).

As the prior discussion of Dr. Nicholas's treatment of plaintiff with Xanax shows, the ALJ herself essentially found, with overwhelming support in the record, that plaintiff was not treated only intermittently with medication, but continuously. Again, the ALJ stated:

Notably, a review of Dr. Nicholas' records shows the claimant's low dosage of 2mg of Xanax per day remained unchanged throughout the entire period of treatment.

Tr. 35 ¶ 3. And, as noted, the records of Dr. Nicholas confirm that at every visit he prescribed Xanax for plaintiff. Tr. 385, 382, 381, 380, 379, 378, 377, 376, 375, 373, 371, 452, 565, 574, 573, 562, 560 (cited in chronological order). But Xanax is not the only medication he prescribed for her. Dr. Nicholas's records indicate that at every visit he also prescribed opioid pain medication, consisting of OxyContin alone or both OxyContin and oxycodone. Tr. 385, 382, 381, 380, 379, 378, 377, 376, 375, 373, 371, 451, 565, 574, 573, 562, 560 (cited in chronological order).

The ALJ's further finding that "no physician render[ed] an opinion that the claimant is disabled or corroborat[ed] her allegations of total incapacitation" is also contradicted by the ALJ's own decision. Tr. 39 ¶ 5. As discussed, the ALJ found that "[f]unctionally, in September 2012, Dr. Nicholas opined that the claimant would be unable to perform a full range of work activity at even a sedentary level of exertion due to [in part] . . . the need to rest for four hours,

17
Case 2:16-cv-00004-FL Document 28 Filed 01/19/17 Page 17 of 19

during an eight-hour workday." Tr. 38 ¶ 5. This is obviously an opinion by a physician that plaintiff is disabled.

As harmful error under *Mascio*, the deficiencies in the ALJ's findings on plaintiff's credibility require remand. They also warrant remand on the independent ground that they frustrate meaningful review of the ALJ's decision. Just as with her assessment of Dr. Nicholas's opinions, the ALJ failed with respect to plaintiff's credibility to build "an accurate and logical bridge from the evidence to [the] conclusion" she reached. *Monroe*, 826 F.3d at 189 (internal quotation marks omitted).[7]

## **CONCLUSION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 24) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 26) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of this case. These are matters that are for the Commissioner to resolve.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 2 February 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further

---

[7] Notably, the ALJ did not address the credibility of the hearing testimony of plaintiff's mother. It is certainly preferable, if not essential, that the Commissioner expressly assess the credibility of any such lay witnesses in remand proceedings.

evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 19th day of January 2017.

_____
James E. Gates
United States Magistrate Judge